UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERMAN OLAIZOLA,

                 Plaintiff,

            -v-

ROBERT FOLEY,

                 Defendant.

16-CV-3777 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Herman Olaizola, who is currently incarcerated at the Green Haven Correctional Facility, has filed this *pro se* civil rights action against New York City Police Department ("NYPD") Officer Robert Foley. The operative complaint alleges that Foley's conduct in connection with Olaizola's May 10, 2012 arrest and subsequent prosecution violated Olaizola's rights under the U.S. Constitution, and Olaizola seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Dkt. No. 10.) The parties have taken discovery, and Foley has now moved for summary judgment. (Dkt. No. 42.) For the reasons that follow, Foley's motion is granted.

**I. Background**

Except where noted, the Court draws its discussion of the case's factual background from the statement of undisputed facts Foley has submitted in connection with his summary judgment motion. (Dkt. No. 43 ("SOF").) Because Olaizola has controverted none of the facts contained in Foley's statement, they are "deemed admitted" to the extent the evidentiary record supports them. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

1

On the morning of May 10, 2012, Officer Robert Foley arrested Olaizola in connection with a vehicle stop in the Bronx.[1] (SOF ¶ 1; Dkt. No. 44-3.) Foley searched the vehicle and recovered, among other things, a pair of sneakers, two watches, two laptops, and a video game console. (SOF ¶ 6; Dkt. No. 45 ("Foley Decl.") ¶ 3.) Foley then took Olaizola, along with the recovered items, to an NYPD precinct office in the Bronx. (SOF ¶¶ 2–3; Foley Decl. ¶¶ 4–5.)

Later that evening, Queens-based NYPD Officer Brian Ritto came to the Bronx precinct office to inspect the recovered property (SOF ¶ 3; Foley Decl. ¶ 5), which apparently matched a description of several items that had been reported stolen from two Queens apartments earlier that day (Dkt. No. 44-4 at DEF 21–22, 28–29). Meanwhile, Foley issued Olaizola a Desk Appearance Ticket directing Olaizola to appear in the Bronx County Criminal Court on September 11, 2012, to answer a set of charges related to the vehicle stop, including criminal possession of a weapon and criminal possession of stolen property. (SOF ¶ 4; Dkt. No. 44-3; Dkt. No. 44-5 at DEF 14.) Foley then released Olaizola from his custody, upon which Ritto immediately arrested Olaizola on separate charges of third-degree burglary (the "Queens charges") and transferred him to the Queens precinct office. (SOF ¶¶ 5, 7; Foley Decl. ¶ 6; Dkt. No. 44-4 at DEF 26–27.)

Two days later, on May 12, 2012, Olaizola was arraigned on the Queens charges and transferred to a New York City Department of Correction facility on Rikers Island. (SOF ¶¶ 8–

---

[1] The parties dispute the circumstances of the arrest. Foley contends that he pulled Olaizola over for driving recklessly and then arrested Olaizola upon discovering that Olaizola had been driving on a suspended license. (Dkt. No. 44-5 at DEF 11.) Olaizola, though, maintains that he had in fact been riding as a passenger and that Foley arrived on the scene after the car in which Olaizola had been riding was sideswiped by another vehicle. (Dkt. No. 10 at 7.) According to Olaizola, Foley's partner allowed the vehicle that had been at fault to leave the scene, while Foley demanded to search the car in which Olaizola had been riding. (*Id.*) After Olaizola refused, Foley, in Olaizola's account, placed Olaizola under arrest. (*Id.*)

9; Dkt. No. 44-4 at DEF 24; Dkt. No. 44-9.) Eventually, Olaizola was convicted in the Queens Supreme Court of burglary in the second degree and was sentenced to a prison term of sixteen years to life. (SOF ¶¶ 10–11; Dkt. No. 44-8.) After sentencing, Olaizola was transferred from Rikers Island to state prison. (SOF ¶ 13; Dkt. No. 44-9.)

Meanwhile, proceedings in the Bronx were following their own course. On August 20, 2012, three months after Olaizola's initial arrest, Foley filed a criminal complaint against Olaizola in the Bronx Supreme Court asserting several charges related to Olaizola's alleged reckless and unlicensed driving, as well as a charge of criminal possession of a controlled substance in the seventh degree (the "Bronx charges"). (SOF ¶ 14; Dkt. No. 44-5 at DEF 10.) Olaizola was arraigned on the Bronx charges on September 11, 2012 (SOF ¶ 15; Dkt. No. 44-5 at DEF 17), but on June 18, 2013—the day of Olaizola's sentencing on the Queens charges—the prosecution moved to dismiss the pending Bronx charges "in the interest of judicial economy" (SOF ¶¶ 16–17; Dkt. No. 44-6 at DEF 116). The Bronx Supreme Court granted the motion, and the Bronx charges were dismissed and sealed that same day. (SOF ¶ 21; Dkt. No. 44-7.)

A few years later, on April 4, 2016, Olaizola initiated the instant action.[2] (Dkt. No. 2.) In his initial complaint, Olaizola charged a number of defendants with assorted misconduct related to his May 10, 2012 roadside arrest and the subsequent Queens and Bronx proceedings. (*Id.*) In a September 14, 2016 order, this Court directed Olaizola to amend his complaint, observing that several of his claims were fundamentally incapable of success. (Dkt. No. 9.) Olaizola responded by submitting the operative Amended Complaint on September 28, 2016, this time naming Foley as the sole defendant. (Dkt. No. 10.) Foley answered the complaint on

---

[2] Although Olaizola's complaint was not docketed until May 20, 2016, the law in this Circuit is that a *pro se* prisoner's complaint is deemed filed on the date it is submitted to prison officials for transmission to the court. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993).

September 11, 2017 (Dkt. No. 26), and the case proceeded to discovery. With the evidentiary record now assembled, Foley asks that the Court award summary judgment in his favor. (Dkt. No. 42.)

## II. Legal Standard

Where a party moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate, in other words, "only when, if all permissible inferences and credibility questions are resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

## III. Discussion

Olaizola seeks relief under Section 1983, which provides a cause of action against a state actor who has effected "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Although the operative complaint does not set out specific legal claims against Foley, this Court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). In his account of the events of May 10, 2012, Olaizola alleges that Foley subjected him to an "unreasonable and illegal search and seizure," "made up trumped up charges," and "falsified his paper work." (Dkt. No. 10 at 5, 7.) The Court understands Olaizola thereby to assert Fourth Amendment claims of illegal search, false arrest, and malicious prosecution. The Court addresses each claim in turn.

### A. Illegal Search

Olaizola first contends that Foley's vehicular search on May 10, 2012, was "illegal[]." (Dkt. No. 10 at 7.) Foley responds, though, that the factual circumstances surrounding the search are irrelevant because, even assuming the truth of Olaizola's account, any claim challenging the lawfulness of the search is time-barred. (Dkt. No. 46 at 5–6.)

The statute of limitations for a Section 1983 claim is governed by the limitations period that "the law of the State in which the cause of action arose" applies to personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New York, the relevant limitations period is three years, *see* N.Y. C.P.L.R. § 214(5), so Olaizola's "initial complaint must have been filed within three years of the accrual of [his] claim," *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015). Under federal law, which governs the question of when a Section 1983 claim accrues, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Wallace*, 549 U.S. at 388).

Applying these principles here, the Court concludes that Olaizola's illegal-search claim is time-barred. The claim accrued on May 10, 2012, the date on which the challenged search took place. *See McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014) ("An unlawful search claim accrues at the time of the search."); *cf. Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary order) (noting that "the harm resulting from an unconstitutional search" for purposes of accrual "occurs as a result of the search itself"). Olaizola, though, did not file suit until April 4, 2016, more than three years later.

Rather than challenging this point directly, Olaizola instead suggests that the accrual date of his illegal-search claim should be equitably tolled until June 18, 2013, the date on which the Bronx charges were dismissed. (Dkt. No. 10 at 8; *see also* Dkt. No. 57 at 1.) But although tolling may be appropriate "where a plaintiff has been 'prevented in some extraordinary way

5

from exercising his rights,'" *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)), as where a defendant has fraudulently concealed the existence of a cause of action, *see Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002), there is no indication that anything of that sort occurred here. To the contrary, Olaizola "was present when the search occurred," and so knew of his cause of action the moment it accrued. *Rudaj*, 522 F. App'x at 77. He has therefore presented the Court with no basis for applying the doctrine of equitable tolling.

The Court therefore grants summary judgment to Foley on Olazola's illegal-search claim.

### B. False Arrest

Olaizola next contends that his warrantless May 10, 2012 roadside arrest was based on "trumped up charges" and was therefore, presumably, unsupported by the probable cause required by the Fourth Amendment. (Dkt. No. 10 at 7.) Here too, though, Foley contends that Olaizola's claim is untimely. (Dkt. No. 46 at 5–6.)

False arrest "is a species of" false imprisonment, *Wallace*, 549 U.S. at 388, and as the Second Circuit has recognized, "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends," *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017) (alteration in original) (quoting *Wallace*, 549 U.S. at 389). False imprisonment indisputably ends when restrictions on a detainee's freedom cease, but "[i]t is of course possible for the tort of 'false imprisonment' to end" even before that time. *Id*. After all, "false imprisonment is characterized by 'detention *without legal process*,'" so the false-imprisonment claim of a person who is subject to ongoing detention accrues "once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (quoting *Wallace*, 549 U.S. at 389–90).

6

According to Foley, Olaizola's false-arrest claim accrued on the evening of May 10, 2012. (Dkt. No. 46 at 6.) First, Foley argues, that date marked the end of Olaizola's detention in connection with the roadside arrest that Olaizola challenges here.³ Second, Foley contends, to the extent that Olaizola was subject to ongoing liberty restrictions after that date, the restrictions were pursuant to legal process, by virtue of the Desk Appearance Ticket. *See Weir v. City of New York*, No. 05 Civ. 9268, 2008 WL 3363129, at *10 (S.D.N.Y. Aug. 11, 2008) (holding that a "claim for false arrest accrued . . . when [the plaintiff] was given [a] desk appearance ticket and released from the stationhouse"); *cf. Burroughs X v. Dorn*, No. 13 Civ. 3609, 2013 WL 6563153, at *2 (E.D.N.Y. Dec. 10, 2013) ("[C]ourts in this Circuit have held that [a false-arrest] claim arises on the date . . . when the claimant is issued a summons to appear.").

The Court declines to weigh in on these arguments, however. Specifically, the Court takes no view on whether Olaizola's detention ended upon his release from the Bronx precinct office. *Cf. Burg v. Gosselin*, 591 F.3d 95, 99 (2d Cir. 2010) (leaving open the question of whether a person who is not physically detained but who faces "serious criminal charges" is subject to a Fourth Amendment seizure (quoting *Albright v. Oliver*, 510 U.S. 266, 278 (1994) (Ginsburg, J., concurring))); *Cabrera v. City of New York*, No. 16 Civ. 1098, 2017 WL 6040011, at *9 (S.D.N.Y. Dec. 4, 2017) (concluding that a factual question existed as to whether a plaintiff who was not in custody remained seized when he "was charged with a [crime] punishable by up to one year in jail and a fine of up to $1,000, with all the attendant collateral consequences of

---

³ To the extent that Olaizola seeks to argue that his detention by Ritto on the Queens charges forms part of *Foley's* alleged act of false imprisonment, the argument fails. *See Wallace*, 549 U.S. at 391 (rejecting the view that accrual of a false-arrest claim should be tolled where the alleged false arrest "set[s] the wheels in motion for [a] subsequent . . . detention"); *Thompson v. City of Mt. Vernon*, No. 93 Civ. 4788, 1994 WL 561253, at *2 (S.D.N.Y. Oct. 12, 1994) (rejecting the view that "two separate arrests, by two different law enforcement authorities, on two sets of unrelated charges" constitute "a single or related proceeding" for accrual purposes).

having a criminal record"). And although the Court doubts that an arresting officer's unilateral issuance of a Desk Appearance Ticket constitutes the sort of legal process that triggers accrual of a false-arrest claim, the Court need not decide that issue either. *Cf. Manuel v. City of Joliet*, 137 S. Ct. 911, 915 (2017) (citing "[a] *judge's* probable-cause determination" as illustrative of the sort of "legal process" that triggers accrual (emphasis added)); *Coleman v. City of New York*, 688 F. App'x 56, 58 n.1 (2d Cir. 2017) (summary order) ("Deprivations of liberty from the moment of warrantless arrest until *arraignment* are not pursuant to legal process, and therefore implicate the . . . tort of false arrest." (emphasis added)); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) ("Typically, a warrantless deprivation of liberty from the moment of arrest to the time of *arraignment* will find its analog in the tort of false arrest . . . ." (emphasis added)).

Instead, the Court notes only that Olaizola was arraigned on September 11, 2012, in connection with the challenged arrest. Because arraignment unquestionably constitutes legal process, *see Wallace*, 549 U.S. at 389, Olaizola's false-arrest claim against Foley accrued at the latest on September 11, 2012. And because Olaizola's April 4, 2016 complaint was not filed within three years of that date, Olaizola's false-arrest claim is time-barred.[4] The Court therefore grants summary judgment to Foley on Olaizola's false-arrest claim.

### C. Malicious Prosecution

Finally, Olaizola contends that Foley "falsified" unspecified "paper work" (Dkt. No. 10 at 7) and emphasizes that the Desk Appearance Ticket that Foley issued him at the Bronx precinct office contained weapons and stolen-property charges that were absent from the

---

[4] To the extent that Olaizola seeks equitable tolling in connection with his false-arrest claim (*see* Dkt. No. 10 at 8), the Court concludes that it is unwarranted for the reasons given in connection with Olaizola's illegal-search claim, *see supra* Section III.A.

criminal complaint that followed three months later (Dkt. No. 57 at 2). The Court understands these allegations to raise a claim of malicious prosecution under the Fourth Amendment.[5]

Because Olaizola filed his April 4, 2016 complaint within three years of the June 18, 2013 dismissal of the Bronx charges, his malicious-prosecution claim is timely. *See Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("In malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution 'terminate[s] in the plaintiff's favor.'" (alteration in original) (quoting *Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc))). Foley agrees on this point but argues that the undisputed facts establish that he is entitled to prevail on the merits as a matter of law nonetheless. (Dkt. No. 46 at 7–12.)

Olaizola's malicious-prosecution claim can succeed only if he is ultimately able to demonstrate "(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'" *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)). In addition, he must show that the challenged proceeding effected "some deprivation of liberty consistent with the concept of 'seizure,'" *Singer*, 63 F.3d at 116, and that this deprivation was "effected 'pursuant to legal process,'" *id.* at 117 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Foley argues that Olaizola cannot, as a matter of law, establish (1) that he suffered

---

[5] In this Circuit, "a claim of malicious prosecution may not be brought as a substantive due process claim." *Zito v. Town of Babylon*, 534 F. App'x 25, 28 (2d Cir. 2013) (summary order) (quoting *Singer*, 63 F.3d at 115). And to the extent that Olaizola's allegation that he was never transported to his arraignment on the Bronx charges is intended to raise a procedural due-process claim (Dkt. No. 10 at 8), there is no evidentiary basis for holding *Foley*—rather than, presumably, personnel at the correctional facility in which Olaizola was being held—responsible for this procedural mishap.

a Fourth Amendment liberty deprivation in connection with the Bronx proceedings (Dkt. No. 46 at 8–9), or (2) that the Bronx proceedings terminated in his favor (Dkt. No. 46 at 9–12).

The Court agrees with Foley on the latter point and so need not address the former. Under the Second Circuit's case law, "affirmative indications of innocence" are required "to establish 'favorable termination'" for purposes of a Section 1983 malicious-prosecution claim. *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018); *see also Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992) (holding that a disposition that "leaves the question of guilt or innocence unanswered" cannot, as a matter of law, "provide the favorable termination required as the basis for a [Section 1983] claim of malicious prosecution" (first quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 504–05 (1984))). Here, Olaizola has failed to produce evidence of "why the [Bronx] charges were dismissed," and so the summary judgment record contains "insufficient proof as a matter of law that the proceedings were terminated in [his] favor." *Fate v. Charles*, 24 F. Supp. 3d 337, 343 (S.D.N.Y. 2014) (second alteration in original) (second quoting *Russo v. New York*, 672 F.2d 1014, 1020 (2d Cir. 1982)). If anything, the record suggests that the Bronx charges were dismissed not because of Olaizola's innocence but because his lengthy criminal sentence on the Queens charges meant that moving forward on misdemeanor charges in the Bronx would disserve "judicial economy." (Dkt. No. 44-6 at DEF 116.)

In response, Olaizola points out that the Desk Appearance Ticket that, in the parties' view, commenced the allegedly malicious prosecution (Dkt. No. 46 at 8; Dkt. No. 57 at 2) contained not only the dismissed Bronx charges, but also weapons and stolen-property charges that Foley dropped prior to arraignment (Dkt. No. 57 at 2). Even assuming that the issuance of a Desk Appearance Ticket represents the sort of legal process required for a malicious-prosecution

claim, *but see supra* Section III.B,[6] and even assuming that the unexplained decision to drop charges prior to arraignment constitutes favorable termination, however, Olaizola has identified no evidence of a unique deprivation of liberty occasioned by the weapons and stolen-property charges, as distinct from the charges upon which he *was* arraigned. *See Ramos v. City of New York*, No. 15 Civ. 6085, 2017 WL 3575697, at *3 (S.D.N.Y. Aug. 17, 2017) ("The contested criminal charge allegedly causing the deprivation of liberty must be independent from other legally sufficient charges arising out of the same incident." (quoting *Flynn-Rodriguez v. Cheng*, No. 14 Civ. 2287, 2017 WL 3278889, at *2 (E.D.N.Y. Aug. 1, 2017))); *Othman v. City of New York*, No. 13 Civ. 4771, 2015 WL 1915754, at *6 (E.D.N.Y. Apr. 27, 2015) (requiring plaintiff to demonstrate a "deprivation of liberty that stems exclusively from those charges that may have terminated in his favor"). The weapons and stolen-property charges, standing alone, cannot therefore form the basis for a malicious-prosecution claim. Accordingly, the Court concludes that Foley is entitled to summary judgment on Olaizola's malicious-prosecution claim as well.

---

[6] Foley cites *Stampf v. Long Island Railroad*, 761 F.3d 192 (2d Cir. 2012), for the proposition that "[t]he issuance of a [Desk Appearance Ticket] is a[] form of legal process which can commence a prosecution" (Dkt. No. 46 at 8). But *Stampf* addressed a malicious-prosecution claim under New York state law, *see Stampf*, 761 F.3d at 198–99, and so had no occasion to opine on what constitutes legal process in the Fourth Amendment context, *see Lanning*, 908 F.3d at 25 ("[F]ederal law defines the elements of a [Section] 1983 malicious prosecution claim . . . .").

## IV. Conclusion

For the foregoing reasons, Foley's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 42 and to close this case.

SO ORDERED.

Dated: February 4, 2019
      New York, New York

                                      J. PAUL OETKEN
                                  United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*